**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

**LETTER OPINION**
**NOT FOR PUBLICATION**

September 21, 2007

Craig A. Borgen
Galasso, Borgen & Baker LLC
84 East Ridgewood Avenue
2nd Floor
Ridgewood, NJ 07450
    (*Attorney for Plaintiff*)

William D. Manns, Jr.
Nevada Court Mall
21-23 Court Street
Newark, NJ 07102
    (*Attorney for Township Defendants*)

Richard F.X. Regan
DeCotiis Fitzpatrick Gluck & Cole, LLP
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, NJ 07666
    (*Attorney for Essex County Prosecutor's Office Defendants*)

    **RE:   Stackhouse v. Twp. of Irvington, et al.**
           **Civ. No. 04-5964 (WJM)**

Dear Counsel:

    Plaintiff Stack Stackhouse commenced the instant action in this Court against the Township of Irvington, the Irvington Police Department, Officer

Christopher Jenkins ("Jenkins"), Officer Ray Hoffman ("Hoffman", and together with the Township of Irvington, the Irvington Police Department and Jenkins, the "Township Defendants"), the Office of the Essex County Prosecutor, Donald G. Campolo, Assistant Attorney General and Acting Essex County Prosecutor ("Campolo"), Roger A. Solomon, Special Deputy Attorney General and Acting Assistant Prosecutor ("Solomon", and together with the Office of the Essex County Prosecutor and Campolo, the "Essex County Prosecutor Defendants"), as well as several unnamed defendants.  The Complaint alleges excessive force, unlawful arrest and unlawful imprisonment in violation of 42 U.S.C. §§ 1983, 1981, 1985 and 1986 (Counts 1 through 4), and excessive force, assault and battery (Count 5), false arrest and imprisonment (Count 6), and malicious prosecution (Count 7) under applicable state law.  These alleged violations arise from an incident on December 11, 2002, when Plaintiff was shot once in the leg by Hoffman.

This matter is currently before the Court on two separate motions — (1) a motion to dismiss, filed by the Essex County Prosecutor Defendants, and (2) a motion for dismissal or, in the alternative, for summary judgment, filed by the Township Defendants.  The Court adjudicates this matter on the papers.  Fed. R. Civ. P. 78.

**I.    THE ESSEX COUNTY PROSECUTOR DEFENDANTS' MOTION**

The Essex County Prosecutor Defendants have moved to dismiss the complaint with prejudice as it pertains to them, pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff does not formally contest this motion and responds only by way of a certification, which concedes that "there is no factual basis on which to proceed against the County Defendants at this time."  (Borgen Cert., Dec. 1, 2006, ¶ 3.)  Plaintiff asks, however, that the dismissal be without prejudice, arguing that "as discovery is in its infancy, facts may be uncovered which may necessitate restoring the Complaint as to these defendants."  (*Id.* ¶ 4.)  In response, the Essex County Prosecutor Defendants contend that the Court should not allow Plaintiff to engage in a "fishing expedition in search of both a theory of liability and facts in support," when Plaintiff has thus far failed to articulate any potentially viable theory of liability as to these defendants.  (Essex County Defs.' Reply Br. 1-2.)  They note that the Complaint contains no factual allegations that the prosecutor defendants ever acted outside of their official roles, and argue that the prosecutor defendants are therefore immune from prosecution.  (*Id.* 2-3.)

Plaintiff, on the other hand, has given the Court no basis to assume that further discovery would yield favorable evidence such that any future filing by Plaintiff against these defendants would not be futile for the reasons cited by the Essex County Prosecutor Defendants.  The Plaintiff's vague assertion that "facts may be uncovered" is insufficient under the circumstances.  In particular, the Court notes that the Complaint in this matter was filed nearly three years ago, on December 3, 2004, and the answer was filed on May 13, 2005.  Discovery scheduling conferences were held in October and November 2006.  Plaintiff has made no formal motion to request additional time or to object to any discovery schedule — indeed, Plaintiff has made no motions at all regarding discovery.

For the foregoing reasons, the Essex County Prosecutor Defendants' motion is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE** as to Campolo, Solomon and the Office of the Essex County Prosecutor.

## II.  THE TOWNSHIP DEFENDANTS' MOTION

The Township Defendants have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. 56.  Once again, Plaintiff — who is represented by counsel — claims in his brief opposing summary judgment that discovery is not yet complete, yet has given the Court no basis to assume that further discovery would yield favorable evidence.  (*See* Pl.'s Br. 19, 27.)  More specifically, as noted above, despite the fact that the Complaint in this matter has been pending since December 3, 2004, Plaintiff has made no discovery motions, nor has he taken any other steps to pursue discovery or to object to any perceived deficiencies in how discovery was proceeding.  Plaintiff has had ample time in which to do so.  Moreover, Plaintiff has not submitted an affidavit pursuant to Fed. R. Civ. P. 56(f) "identifying 'with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002) (quoting *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994)).

For the foregoing reasons, the Court finds that the Township Defendants' summary judgment motion is not premature.  For the reasons discussed below, the Court will **GRANT** the Township Defendants' motion for summary judgment as to Plaintiff's federal claims.  The Court will **DENY** the Township Defendants' motion as to Plaintiff's state law claims, but we will decline to exercise

supplemental jurisdiction over those claims.

### A.     Factual Background

The following is a brief summary of the relevant facts, taken from the Plaintiff's Rule 56.1 Statement, Plaintiff's exhibits and Plaintiff's deposition, and supplemented from Defendants' exhibits where facts are not in dispute.

On December 11, 2002, just after three o'clock in the morning, a motorist leaving a Hess gas station in Irvington flagged down Officers Hoffman and Jenkins and told them that a fight or disturbance was taking place inside the attendant's booth. (Pl.'s R. 56.1 Stmt. 8; Pl.'s Exs. D, F.) As the officers approached the attendant's booth, Jenkins "observed a black male wearing a dark colored jacket inside the booth," and noted that the man "was in a hunch [sic] position." (Pl.'s R. 56.1 Stmt. 8; Pl.'s Ex. D.) Hoffman's report indicated that as the officers approached the booth, "a black male stood up with a black gun in his hand and was trying to open the booth door." (Pl.'s R. 56.1 Stmt. 9; Pl.'s Ex. E.) The armed individual spotted the patrol car and bolted from the booth. (Pl.'s Ex. D.) Jenkins and Hoffman then exited their vehicle and ran around the booth after the suspect, with Jenkins running eastbound and Hoffman running westbound. (Pl.'s R. 56.1 Stmt. 8-9; Pl.'s Exs. D, E.) Hoffman's report states that as he pursued the suspect, Hoffman yelled "Police" and "Stop", and that the suspect, seeing Hoffman approach, pointed the gun at Hoffman. (Pl.'s R. 56.1 Stmt. 9-11; Pl.'s Ex. E; Defs.' Ex. C.) Hoffman's report indicates that, fearing for his life and having no cover available, Hoffman fired one round at the suspect, striking him in the rear left thigh. (Pl.'s R. 56.1 Stmt. 9-10; Pl.'s Ex. E.) Hoffman's report states that the suspect dropped the gun and continued to run before eventually diving to the ground. (Pl.'s R. 56.1 Stmt. 9; Pl.'s Ex. E.)

Jenkins' report and grand jury testimony do not indicate that Jenkins saw the gun in the suspect's hand while the suspect was in the booth. (Pl.'s Ex. J 6:1-12.) Because Jenkins and Hoffman ran in different directions around the booth, Jenkins also did not see Hoffman fire the shot, and did not see the suspect aim a gun at Hoffman. (Pl.'s Ex. J 6:1-12; 8:1-8, 18-22.) Jenkins found a black .45 caliber semiautomatic handgun on the ground a few yards from the suspect. (Pl.'s Ex. J 6:11-12, 7:3-6, 10:10-25; Pl.'s Ex. C.) The weapon was later determined to be inoperable. (Pl.'s Ex. K.) Also recovered from the scene near the suspect were a pair of gloves, two packs of Kool cigarettes and a jacket containing over $80 in

cash.  (Pl.'s Ex. J 9:21-10:2; Pl.'s Exs. C, E, G.)

J.C. Boyd, the attendant in the booth, was the only gas station employee on duty at the time of the robbery.  (Defs.' Ex. C.)  Boyd gave a signed, sworn statement to officers that night describing the robbery.  (*Id*.)  Boyd's statement indicated the suspect had stolen cash and multiple packs of cigarettes.  (*Id.*)  Boyd's statement indicated that he saw both officers running after the suspect, and heard them yell at him to halt.  (*Id.*)  He states that he saw the suspect turn and point his gun at the police, at which point one of the officers fired a single shot and the suspect fell to the ground.  (*Id.*)

At his deposition, Plaintiff testified that he was unarmed the night of the shooting.  (Stackhouse Dep. 158:3-6.)  He testified that he was walking to a taxi stand that was near the Hess gas station in Irvington when he saw a man running up the street in the direction of the taxi station.  (*Id.* 62:17-63:3, 66:11-16.)  Because there was only one taxi at the station, and Plaintiff believed that the other man was running to catch it, Plaintiff started to run as well.  (*Id.* 66:17-20; 118:23-119:4.)  As Plaintiff started to run, the other man veered away from the taxi station and turned a corner, so Plaintiff started to slow down.  (*Id.* 66:20-22; 118:6-10.)  The next thing Plaintiff knew, he had been shot in the back of the leg.  (*Id.* 66:22-24.)  Plaintiff was on the same side of the street as the Hess station.  (*Id.* 81:10-13.)  Plaintiff was behind the other man the whole time.  (*Id.* 118:11-18.)  Plaintiff did not see the other man drop anything.  (*Id.* 119:22-120:5.)  Plaintiff testified that he did not see the officer fire his gun.  (*Id.* 166:9-13.)  Plaintiff denied that, prior to being shot, he had robbed or attempted to rob the gas station attendant at the Hess station.  (*Id.* 81:18-22.)

After the shooting, Plaintiff was taken to University Hospital.  (Pl.'s R. 56.1 Stmt. 10-11; Pl.'s Ex. A.)  An arrest warrant was obtained the next day.  (Defs.' Ex. D.)  Plaintiff was then formally arrested at the hospital and was eventually taken to Essex County Jail.  (Defs.' Ex. F; Pl.'s R. 56.1 Stmt. 12.)  The matter was presented to the Grand Jury on or about April 4, 2003, and an indictment was returned against Plaintiff charging him with first-degree robbery; second- and third-degree unlawful possession of a weapon; third-degree resisting arrest; and fourth-degree aggravated assault.  (Pl.'s R. 56.1 Stmt. 11; Defs. Ex. E.)  Plaintiff was incarcerated until March 2004, when all charges against him were dropped at the recommendation of the Prosecutor's Office.  (Pl.'s Ex. L.)  An internal memorandum from the Prosecutor's Office explains that the weapons charges had

already been dropped because the gun recovered was determined to be completely inoperable. (Pl.'s Exs. K, L.) The memorandum recommends that the remaining charges be dismissed because Boyd, the gas station attendant, could not be located, and the state court had ruled against permitting Jenkins to testify to the victim's excited utterance, just after the robbery, that "that guy just held me up." (Pl.'s Ex. L.)

### B.     Standing

As an initial matter, the Township Defendants challenge Plaintiff's standing to bring the instant action, and move for dismissal on that basis. They note that although the case is brought by "Stack Stackhouse," all of the underlying documents in this matter (including the hospital records, police reports, and records of the state prosecution) refer to the individual who was shot by Hoffman as "Alphonso Jenkins."[1]

At the Plaintiff's deposition, the parties attempted to clarify this issue. Plaintiff testified that his name was Stack Stackhouse, but that he was the individual shot and identified in the police reports as Alphonso Jenkins. (Stackhouse Dep. 8:10-9:2.) Plaintiff showed his bullet wound, and pointed out where the bullet entered his rear left thigh and exited his front inner left thigh. (*Id.* 9:3-24.) Plaintiff testified that he was subsequently hospitalized and incarcerated under the name Alphonso Jenkins, and that he does not know how the officers or the hospital obtained the false name, address and birthdate under which he was admitted to the hospital and arrested. (*Id.* 38:1-39:20.)

Although the Defendants offer a passing challenge Plaintiff's standing, and although there does appear to be residual confusion as to how "Stack Stackhouse" became "Alphonso Jenkins," it does not appear to be seriously in dispute that the individual bringing this action is the same individual who was shot by Officer Hoffman on December 11, 2002, and who was subsequently hospitalized, incarcerated and indicted under the name Alphonso Jenkins. The Court is therefore satisfied that Plaintiff Stack Stackhouse has standing to bring the instant

---

[1] In addition to "Alphonso," the suspect's first name is also given as "Alfonso" and "Alphonse" in the police reports. At one point the suspect is also referred to as "Jayc Jenkins," in an apparent confusion with the gas station attendant, J.C. Boyd, also spelled "Jayc" Boyd in some of the reports. *See* Pl.'s Exs. D, H; Defs.' Ex. C.

suit.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

### C. Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Equimark Commercial Financial Co. v. CIT Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

In opposing summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; rather, only disputes over facts that might affect the outcome of the lawsuit, under the governing substantive law, will preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 247-48.  At the summary judgment stage, this Court must view all evidence and consider all reasonable inferences in a light most favorable to the non-moving party.  *Marzano v. Computer Science Corp.*, 91 F.3d 497, 501 (3d Cir. 1996).   However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

#### 1. Plaintiff's § 1983 Claims

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  *Id*.  For a Section 1983 claim to survive summary judgment, there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right.  *Id*.

That the Township Defendants acted under color of state law does not

appear to be in dispute here.  The next step for this Court, then, is to identify the federal right allegedly violated by the defendants.  *See id.*  As discussed in detail below, the Court finds that Plaintiff has not sufficiently demonstrated that any of his constitutional rights were violated.  Thus, the Court concludes that no liability can be imposed on the Township Defendants under § 1983.

### (a)     Excessive Force

Plaintiff alleges that in attempting to effect his arrest, Hoffman and Jenkins used excessive force against him in violation of his constitutional rights.  Specifically, Plaintiff alleges that he was unarmed, and was shot without provocation.  (Compl. ¶¶ 13-14.)

To state a claim for excessive force under the Fourth Amendment, a plaintiff must demonstrate that a seizure occurred and that it was unreasonable.  *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999).  As the Third Circuit recently stated, "[t]here is 'no question' that a shooting constitutes a seizure under the Fourth Amendment."  *Curley v. Klem*, No. 05-4701, 2007 U.S. App. LEXIS 20213, at *8 n.4 (3d Cir. Aug. 24, 2007) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).  Therefore, the question that remains is whether the shooting in this case was reasonable.

Claims of excessive force by a police officer are evaluated under the Fourth Amendment's "objective reasonableness" standard.  *Brousseau v. Haugen*, 543 U.S. 194, 197 (2004).  In this context, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (U.S. 1989).  The proper application of this test requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  *Id.* at 396.

In considering the circumstances preceding Plaintiff's shooting, the Court notes that Plaintiff has not put forth a version of facts that conflicts in any material respect with the Township Defendants' version of events.  According to Plaintiff, he was unarmed and happened to be in the wrong place at the wrong time — running behind another man, attempting to beat him to a taxi, when he was

suddenly shot by Hoffman.

Plaintiff's version does not materially contradict Defendants' well-documented account of the Hess gas station robbery and the events that followed. Plaintiff denies that <u>he</u> was the one who robbed the gas station, and denies that <u>he</u> pointed a gun at Hoffman just prior to being shot. But Plaintiff does not contradict (1) that Hoffman was in pursuit of a suspect who had just robbed the Hess gas station with a handgun; (2) that the suspect pointed a gun at Hoffman as he was running away; (3) that Hoffman shot a person running away from the scene who he believed was the armed robber; and (4) that a handgun was subsequently found on the ground not far from where Plaintiff lay.

Plaintiff testified that because he was unarmed and was shot when his back was to the officers, he believed Hoffman shot him out of hatred, although he agreed that he had never had contact with Hoffman before that night:

> Q. Mr. Stackhouse, do you contend that when the Irvington Police Department police officer shot you, they shot you because they hated you?
> A. Yes, I would say so.
> Q. And even though you had not seen them ever before in your life, at that moment, for some reason they directed — they developed a hate towards you and they acted out that hate by shooting you?
> A. I would say that, yes.
> Q. What draws you to that conclusion, sir?
> A. Because I wasn't even armed when they shot me and my back was to them.
> Q. So you're saying that they knew they were shooting an innocent man?
> A. I couldn't really say that.

(Stackhouse Dep. 157:14-158:10.)

First, the Court finds that Plaintiff's inference as to the officers' spontaneously developed "hatred" is not only wholly unreasonable, but irrelevant. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make

9

an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397.

Second, taking the facts in the light most favorable to the Plaintiff, as is required at this stage of the proceedings, the only reasonable inference to be drawn from Plaintiff's version of the facts is that Hoffman shot Plaintiff as a result of the mistaken belief that Plaintiff was the armed suspect who had just robbed the Hess gas station. By Plaintiff's own account, Plaintiff was running away from the scene of the robbery in the same vicinity and direction as the suspect, who turned a corner and disappeared from sight just before the shooting. (Stackhouse Dep. 66:20-22; 81:10-13; 118:6-10.)

In considering whether this seizure of Plaintiff was reasonable, we must judge "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396-97. In making this calculus, the Court is mindful of the severity of the crime of armed robbery; the threat to the immediate safety of the public that a fleeing armed robber poses; and the fact that the suspect pointed his gun at Hoffman as he fled in attempt to avoid arrest. *See id.* at 396; *Sharrar v. Felsing*, 128 F.3d 810, 821-22 (3d Cir. 1997). Weighing these factors, the Court finds that a reasonable officer on the scene facing the same rapidly evolving circumstances as Hoffman would have been justified in believing that Plaintiff was a dangerous suspect attempting to elude arrest, such that firing one shot in the leg of the person Hoffman then reasonably believed was the suspect, in order to hinder the suspect's flight, was a reasonable use of force.

The Court concludes that Hoffman and Jenkins have demonstrated that the decision to use sufficient force to arrest the suspect was objectively reasonable in light of the facts and circumstances they confronted.

Because we conclude that the officers' conduct here did not violate the Fourth Amendment, we need not consider whether qualified immunity should shields the officers from liability. *See Scott v. Harris*, 127 S. Ct. at 1774; *Curley*, 2007 U.S. App. LEXIS 20213, at *19. The Court will grant summary judgment in favor of Hoffman and Jenkins as to Plaintiff's excessive force claim under § 1983.

### (b) False Arrest and Imprisonment

Plaintiff also alleges that he was deprived of his right to be free from false arrest and unlawful imprisonment in violation of § 1983. Plaintiff does not, however, challenge the facial validity of the warrant pursuant to which he was formally arrested at the hospital on December 12, 2002, the day after the Hess gas station robbery. *See* Defs.' Ex. D. Regardless, "[i]t is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment." *Kis v. County of Schuylkill*, 866 F. Supp. 1462, 1469 (E.D. Pa. 1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)).

Because Plaintiff does not challenge his formal arrest, we will consider whether Plaintiff's detention at the scene of the robbery, which occurred prior to the issuance of the arrest warrant, constituted unlawful detention for Fourth Amendment purposes. Viewing the facts, once again, in the light most favorable to Plaintiff, and assuming that Hoffman fired his gun at Plaintiff in the mistaken belief that Plaintiff was the individual who had robbed the Hess gas station moments before, a Fourth Amendment seizure occurred. *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). The Court must therefore consider whether, under the facts and circumstances within Hoffman's knowledge, a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested. *Mosley v. Wilson*, 102 F.3d 85, 95 (3d Cir. 1996).

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge [at the moment the arrest was made] are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). Courts apply a "'common sense' approach," based on the totality of the circumstances, to determine whether there was probable cause to arrest. *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (quoting *Sharrar*, 128 F.3d at 818). In general, "the question of probable cause in a section 1983 damage suit is one for the jury." *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998). A district court, however, may conclude that probable cause exists as a matter of law and grant summary judgment if the evidence, when viewed in the light most

11

favorable to the plaintiff, would not reasonably support a contrary factual finding. *See Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

In determining whether an officer had probable cause for an arrest, a court, in reviewing the totality of the circumstances, must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

As discussed in detail in this Court's analysis of Plaintiff's excessive force claim, it is not disputed that just prior to the shooting, Hoffman and Jenkins were in pursuit of a suspect, armed with a handgun, who appeared to have just robbed the Hess gas station, and was running away from the scene. Plaintiff offers no evidence to counter the reasonableness of Hoffman's belief that the person he shot had just committed the offense of robbing the gas station. Under the totality of the circumstances, even when the facts are viewed in the light most favorable to Plaintiff, we conclude that no rational jury could find that the officers here were objectively unreasonable in concluding that, based on the information available to them at the time, they had probable cause to believe that Plaintiff had committed one or more of the offenses for which he was detained and arrested. *See Sharrar*, 128 F.3d at 817-18. Therefore, the Court will grant summary judgment on this claim in favor of Hoffman and Jenkins.

### (c)  Equal Protection

The basis of Plaintiff's alleged violation of the Equal Protection Clause of the Fourteenth Amendment is that "defendants' policy to shoot at[] unarmed, minority suspects instead of pursuing them on foot is discriminatory treatment based on race." (Pl.'s Br. 24.)

To state a claim for an equal protection violation in this context, Plaintiff must demonstrate that an official's actions (1) had a discriminatory effect, and (2) were motivated by a discriminatory purpose. *Bradley*, 299 F.3d at 205. To prove discriminatory effect, Plaintiff must show that he is a member of a protected class and that he was treated differently from similarly situated individuals in an unprotected class. *Id.* at 206. It is undisputed that Plaintiff, as an African-American, is a member of a protected class. However, Plaintiff fails to submit any

evidence that he was treated differently than any similarly situated members of an unprotected class. *See id.* The only evidence Plaintiff offers in support of his bare allegation of a "policy" of shooting unarmed minority suspects instead of pursuing them on foot is the fact that Hoffman was aware of Plaintiff's race when he shot Plaintiff. (Pl.'s Br. 24.) This is insufficient to support a claim for a violation of equal protection. Moreover, while Plaintiff testified that he was just running down the street and the next thing he knew, he was shot — indicating that he did not observe the officers or any of the events at the gas station — the uncontroverted evidence presented by Defendants demonstrates that the officers did, in fact, pursue the suspect on foot prior to Hoffman's firing a single shot at Plaintiff. (*See* Stackhouse Dep. 66:20-24; 166:9-13; Defs.' Ex. C; Pl.'s R. 56.1 Stmt. 8-9; Pl.'s Exs. D, E.) The Court will therefore grant Defendants' motion for summary judgment as to Hoffman and Jenkins on Plaintiff's equal protection claim.

### (d) Due Process

Plaintiff cites no case law in support of his vague due process claim, the basis of which is that because Plaintiff was shot and almost bled to death, and was thereafter incarcerated for approximately 15 months until all charges against him were dismissed, he suffered a deprivation of his rights to life, liberty and due process. (Pl.'s Br. 24-25.) Plaintiff's initial seizure by the police, unfortunately, did result in Plaintiff's injury and hospitalization, but this Court has already addressed the constitutionality of that seizure at length pursuant to the Supreme Court's decision in *Graham v. Connor*, which resolved that the Fourth Amendment is the exclusive source of constitutional protection against excessive force in the course of arrests, investigatory stops and other seizures. *Graham*, 490 U.S. at 393-95. This Court has also noted that prior to being incarcerated at the Essex County Jail, Plaintiff was formally arrested pursuant to a warrant, the validity of which Plaintiff has not challenged. It is unclear to this Court what "due process" Plaintiff claims he was denied at any point in this timeline, and Plaintiff's minimal treatment of the issue in his brief does nothing to shed light on his arguments. The Court will therefore grant the motion for summary judgment as to Hoffman and Jenkins on Plaintiff's due process claim.

### (e) First Amendment

The Complaint also alleges a First Amendment violation under § 1983. (Compl. ¶ 26.) Plaintiff fails to address this conclusory allegation at all in his

opposition brief, and as far as the Court can discern, the First Amendment has no relevance to the factual allegations set forth in the Complaint. The Court will therefore grant summary judgment in favor of Hoffman and Jenkins as to Plaintiff's First Amendment claim.

### (f)     Allegations Against the Municipal Defendants

Under the Supreme Court's decision in *Monell*, a municipality may incur liability under § 1983 only when its policy or custom causes a particular constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Here, Plaintiff's bare allegations that (1) the Township of Irvington and Irvington Police Department have instituted a policy, practice of custom to use excessive force in making arrests, especially of minorities; and (2) that the Township of Irvington and Irvington Police Department have covered up the unlawful shooting of Plaintiff by not taking any action against the detective(s) and officer(s) responsible for the improper discharge of their firearms, are completely devoid of factual support. (Compl. ¶¶ 24, 25, 27.)

Moreover, because we have already concluded that no violation of Plaintiff's constitutional rights has occurred in this matter, there is no basis for imposing municipal liability here. *See Brown v. Comm. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003).

For the foregoing reasons, the Court will grant summary judgment to the Township of Irvington and Irvington Police Department as to all of Plaintiff's claims under § 1983.

### 2.     Plaintiff's § 1981, § 1985 and § 1986 Claims

Plaintiff's claimed violations of 42 U.S.C. §§ 1981, 1985 and 1986, Counts 2 through 4 of the Complaint, are similarly without merit.

Section 1981 has no relevance to the factual allegations set forth in the Complaint. Any claim brought under § 1981 must initially identify an impaired "contractual relationship," § 1981(b), under which the plaintiff has rights. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Plaintiff does not allege that the Township Defendants impaired Plaintiff's right to enter into any contract.

14

In order to state a claim for conspiracy to discriminate based on race in violation of § 1985(3), a plaintiff must allege: (1) a conspiracy of two or more persons; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of person to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). Here, Plaintiff offers no facts in support of his bare allegation that discriminatory intent played a role in Plaintiff's shooting, or his wholly conclusory assertion that the Township of Irvington and the Irvington Police Department conspired to violate the rights of Plaintiff and other unspecified minority individuals. In turn, because no reasonable jury could conclude that Plaintiff has established a violation of § 1985(3), Plaintiff's claim under § 1986, which alleges official knowledge of the above-mentioned conspiracy and the failure to change or prevent deprivation of rights, must also fail as a matter of law. *See Reyes v. City of Trenton*, No. 05-1882, 2007 U.S. Dist. LEXIS 23653, at **32-34 (D.N.J. March 30, 2007).

For the foregoing reasons, the Township Defendants are entitled to summary judgment on Plaintiff's claims under 42 U.S.C. §§ 1981, 1985, and 1986.

### D. Plaintiff's State Law Claims

Plaintiff also alleges three claims under state law — excessive force, assault and battery (Count 5), false arrest and imprisonment (Count 6), and malicious prosecution (Count 7).

Having dismissed Plaintiff's federal claims, the Court will not exercise supplemental jurisdiction over Plaintiff's state claims. *See* 28 U.S.C. § 1367(c)(3) (authorizing same). Therefore, the Court will (1) deny without prejudice the part of the Township Defendants' motion seeking summary judgment as to the state claims; and (2) dismiss the state claims without prejudice to their reinstatement in state court. *See* 28 U.S.C. § 1367(d) (tolling limitations period for state-law claim dismissed under Section 1367 while claim is pending in federal court and for 30 days after dismissal unless state law provides for a longer tolling period).

15

## CONCLUSION

      For the foregoing reasons, the Essex County Prosecutor Defendants' motion is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE** as to Campolo, Solomon and the Office of the Essex County Prosecutor. The Township Defendants' motion for summary judgment is **GRANTED** as to the federal claims and **DENIED** as to the state law claims, over which this Court will decline to exercise supplemental jurisdiction. An appropriate Order accompanies this Letter Opinion.

        s/ William J. Martini  
        **William J. Martini, U.S.D.J.**